**Starling H. JENKINS, Appellant,**

**v.**

**TUBE TURNS, INC., et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 13, 1959.

W. C. Edrington, William A. Shumate, Louisville, for appellant.

Gavin H. Cochran, Norman Curtis, Louisville, Jo M. Ferguson, Atty. Gen., for appellees.

BIRD, Judge.

This action originated before the Workmen's Compensation Board. Jenkins was denied compensation for a hernia which he claims resulted from an injury received while performing his duties as employee of the appellee. Relative to hernia KRS 342.025(1) provides as follows:

**49**

"(1) In all claims for hernia resulting from injury received in the course of and resulting from the employe's employment it must be definitely proved to the satisfaction of the board that:

"(a) There was an injury resulting in hernia.

"(b) The hernia appeared suddenly and immediately following injury; and

"(c) The hernia did not exist in any degree, including the primary or incomplete stage, prior to the injury for which compensation is claimed."

The Board found as a matter of fact that Jenkins had failed to satisfy the foregoing provisions of the statutes. It was found by the Board that the hernia predated the injury claimed by Jenkins. This finding was affirmed by judgment of the Jefferson Circuit Court and this appeal followed. There is only one question to be determined here. Was there competent evidence of probative value to support the finding of the Board? If there was such evidence the finding must be upheld and the judgment affirmed. Abbott v. Grissom-Rakestraw Lumber Co., Ky., 279 S.W.2d 227.

The evidence shows that Jenkins had suffered two previous hernias on his left side. It is not claimed that either of these were compensable under the act. He had surgery for repair of the later one in November, 1953. Dr. J. Duffy Hancock performed the operation. Jenkins testified that on or about January 15, 1954, he received an injury resulting in a third hernia on the left side. The evidence shows that he visited the same Dr. Hancock on or about January 23, 1954. Dr. Hancock testified that he examined Jenkins at that time but found no evidence of hernia. He says, however, that he did find tenderness in the region of the scar left by the operation of November, 1953. The evidence discloses that Jenkins continued to work until March 17, 1954, at which time there was

a "lay-off." He had continued to do the same type of heavy work which he said produced the injury. In May, 1954, he again went to Dr. Hancock who at that time reexamined him and found the hernia which Jenkins claims to have resulted from the injury and for which he now claims compensation.

Dr. Hancock testified substantially to the effect that the protrusion and tenderness of this hernia are in the same location as the hernia for which he had operated in November of 1953. The evidence shows the diagnosis to have been "recurrent indirect left inguinal hernia." An operation was performed in August, 1954 to repair it.

The arguments and facts presented in this case are almost identical with those presented in Crawford v. Tampa Inter-Ocean S. S. Co., La.App., 150 So. 875, 876, and we quote:

"Three doctors testified as experts, Dr. Julian Lombard for plaintiff, and Dr. S. Geismar and Dr. E. A. Ficklen for defendant. Their testimony is in substantial agreement and to the effect that, though the operation which had been performed on Crawford by Dr. Geismar on June 1, 1932, was properly and skillfully done and successful in every particular, the hernia recurred within a short while thereafter; it being explained that in something like 10 per cent of cases of hernia there is a recurrence after an operation, no matter how skillful the officiating surgeon may be. All the doctors are likewise in agreement that in Crawford's case a recurrence was in the exact spot where the former hernia was. It is the contention of the defendant that the second hernia referred to by the physicians as a recurrence of the former hernia was, in fact, a new hernia on the site of the old one—a new break in the abdominal wall in the same place. The first hernia, it is said, was entirely cured by the operation, and Crawford had fully recovered; in

fact, he had returned to work and put in several full days with another employer in his former occupation as stevedore. * * *

■ "We cannot agree with this view of the case because it is at variance with the medical testimony. A 'recurring hernia' at the same spot, as the word 'recurring' signifies, is a return of a former hernia, which, though temporarily arrested by the operation, was one of the small minority of cases in which a successful result did not follow a skillful operation. The original injury received by Crawford on May 28, 1932, is responsible for his present condition."

■ The conclusions reached in the Crawford case appear to be sound. We therefore hold that the evidence of recurrence in this case was of sufficient probative value to warrant the Board in finding that the hernia existed before the injury and is not compensable under KRS 342.025(1).

The judgment is affirmed.